U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED Mar 13 2026
CAROL L. MICHEL
CLERK
cf Walk-In

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| JON F. HYERS AND | CIVIL ACTION |
| ELIZABETH R. GLASS, | NO. 26-286 |
| Plaintiffs, | |
| VERSUS | SECTION "R" (3) |

The State of Louisiana,
JEFFREY M. LANDRY, in his official capacity as Governor of Louisiana,
and NANCY LANDRY, in her official capacity as Secretary of State of Louisiana,

Defendants.

---

## PLAINTIFFS' MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE [Rec. Doc. No. 1 at 1-2]

## I. INTRODUCTION

Plaintiffs Jon F. Hyers and Elizabeth R. Glass, proceeding *pro se* and *in forma pauperis*, respectfully submit this Memorandum in response to this Court's Order to Show Cause dated

February 11th, 2026 [Rec. Doc. No. 1 at 1-2]. The Court directed Plaintiffs to demonstrate why their Complaint should not be summarily dismissed as frivolous and/or for failure to state a claim upon which relief can be granted, to amend their Complaint to set forth all known details by March 16th, 2026.

Plaintiffs file simultaneously with this Memorandum an Amended Complaint that cures the deficiencies identified by the Court. As set forth below, Plaintiffs' claims are neither frivolous nor lacking in legal merit.

The combined promulgation of Louisiana's; Act 1 (HB 17), 1st Ex. Sess. 2024, Act 640 (HB 873), Reg. Sess. 2024, Act 84 (SB 84), Act 386 (HB 592), & Act 495 (HB 342), Reg. Sess. 2025, Act 1 (SB 1), 1st Ex. Sess. 2025, of Gov. Jeffrey M. Landry's, Proclamation #79, Section 8, December 23, 2025, have imposed concrete, particularized injuries on Plaintiffs, (a.) firstly, by stripping them of their right to full participation in primary elections through the re-enactment of discriminatory Federal Candidate qualifying rules and/or provisions, specifically relative to citizens, otherwise eligible and unaffiliated, (b.) secondly, by imposing arbitrary increases to exclusionary fees, (c.) thirdly, with the enactment of provisions, that confused and/or contaminated an already discriminated pool of voters, (d.) lastly by the additional measures taken to gain partisan advantages, which may constitute an act of fraud upon the electorate generally,/or to the Plaintiffs, both as voters, in their efforts to, qualify as Candidates in 2026 for U.S. Congressional offices, all in full violation of the First and Fourteenth Amendments to the United States Constitution, settled law.

Furthermore, both Plaintiffs have committed to the Article VI, Oath of Affirmation, accordingly assert that these infringements on the prescribed Qualifications to Legislate, Article 1 Section 2, constitute a breach of Article IV Section 4, establish unconstitutional barriers to ballot access, that are historically unique to the state of Louisiana, undermine electoral processes, prevent persons so obliged from the opportunity to fulfill a guarantee through their redress of republican form, in the specifically prescribed venue(s), where-in it remains justiciable.

Plaintiffs have suffered and will continue to suffer concrete and particularized injuries including: a. exclusion from full and meaningful participation in primary elections. b. distortions of their voting power. c. infringements on political association. d. limitations on supporting candidates of their choice. e. pocketbook expenses that otherwise would not be necessary. These injuries are directly traceable to the enactments of the legislative Acts stated, Louisiana Governor's Proclamation #79 Section 8 issued December 23rd, 2025. These injuries would be redressed by a favorable decision of this Court. Plaintiffs therefore have standing under Article III of the U.S. Constitution, as recognized in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)

Finally, as the Only No Party congressional candidate in Louisiana that qualified in 2024, Plaintiff Mr. Hyers is uniquely vulnerable to reputational harm, as No Party voters are likely to determine the outcome of partisan primary elections, subsequently, any losing candidates and their supporters are likely and already have begun to affix blame upon, or to scapegoat those identified as No Party or unaffiliated voters. This harm and injury has already been endured, is demonstrable and persists. See Bost v. Illinois State Board of Elections, No. 24-568, 607 U.S.__(decided Jan. 14, 2026), Slip op. at 5, citing Crawford v. Madison County Election Bd., 553 U.S. 181, 197 (2008) and TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021).

## II. VENUE AND JURISDICTION

1. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the events giving rise to this action occurred within the State of Louisiana and the Defendants reside or perform their official duties within the State. Plaintiffs reside in Jefferson parish, Louisiana, within this district.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution and laws of the United States.

3. The Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation of constitutional rights under color of state law.

4. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, which provides a civil cause of action against any person acting under color of state law who deprives another of rights secured by the Constitution.

5. Plaintiffs also bring claims pursuant to 52 U.S.C. § 10308(f) of the Voting Rights Act Enforcement. Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202. Injunctive relief is authorized by Federal Rule of Civil Procedure 65 and are inherent equitable powers of the Court.

## III. THE PARTIES

### A. The Plaintiffs

1. Plaintiff Jon F. Hyers is a citizen of the United States and a resident of Jefferson Parish, Louisiana. He is a qualified voter, who is registered as No Party (unaffiliated). Plaintiff, Mr. Hyers, qualified as a candidate for Louisiana's 1st Congressional District in 2024 and has been an active public figure since his first State Senate campaign in 2019. Plaintiff, Mr Hyers, was employed as a clerk for the United States, 2020 Decennial Census.

Plaintiff, Mr. Hyers, spoke publicly on behalf of Jefferson parish and the sixty-three other parishes at several of the Joint Committee sponsored statewide Redistricting Roadshow meetings, held across south Louisiana in 2021, additionally giving testimony in both Chambers during the 2nd Extraordinary Legislative Session, held at the State Capitol in February, 2022. He appeared to specially redress the republican form we're guaranteed and the 'Doctrine of Virtual Representation', imposed by arbitrarily drawn State redistricting maps. See; Thomas Jeffersons' opinion to George Washington April 4th, 1792 as it may relate to Legislative Apportionment.

Over the course of three legislative campaign efforts beginning in 2019 for Louisiana State Senate, 2023 for Parish Council and 2024 for Louisiana' District 1, U.S. Representative, Plaintiff, Mr. Hyers. has established a constituency of voters across several parishes, with over 6,779 votes earned in 2024, alone while achieving upwards of 16-17% in precincts across two parishes over the last two campaigns, making grassroots efforts to engage the electorate. Plaintiff, Mr. Hyers, has been a consistent civic advocate, redressing officials at Parish Council meetings on issues related to representative form, taxation and ordinances. Lastly, Plaintiff, Mr Hyers, declared his intentions publicly in November 2024 to campaign for the office of U.S. Senator in 2026.

2. Plaintiff, Elizabeth R. Glass is a citizen of the United States and a resident of Jefferson Parish, Louisiana. She is a registered voter who is registered as No Party (unaffiliated). Plaintiff, Ms. Glass, acted as campaign director for Plaintiff, Mr. Hyers, in 2024 and as manager of candidate's public affairs, since their 2019 State Senate campaign effort. Plaintiff, Ms. Glass, attended several statewide redistricting meetings throughout 2021 and spoke publicly to a Joint Committee hearing in an effort to redress apportionment concerns, related to redistricting maps, in the support and defense of what is prescribed, Constitutionally. Plaintiff, Ms. Glass has been a Jefferson Parish Elections Commissioner for several years and is particularly invested in her civic duty and our electoral processes. Plaintiff, Ms. Glass intends to campaign for the office of U.S. Representative to serve Louisiana's 1st Congressional district in 2026.

**B. The Defendants**

1. The State of Louisiana is a sovereign state responsible for enacting and enforcing election laws.

2. Jeffrey M. Landry in his official capacity as Governor is responsible for signing the Acts and Proclamation specifically challenged and the promulgation thereof.

3. Nancy R. Landry, Secretary of State of Louisiana, is named in her official capacity. She administers election laws and is empowered to take action where it relates to the qualifying fees, ballot access requirements and signature requirements, challenged herein.

## IV STATEMENT OF CLAIM/CAUSE OF ACTION

### A. The Closed Party Primary Elections Law - Act 1, 1st Ex. Sess., (Jan., 2024) HB 17

1. On January 22nd, 2024, Governor Landry signed 2024 La. Acts 1, (First Extraordinary Session) into law, effective January 1st, 2026. This Act repealed Louisiana's nearly fifty-year-old, open primary system and reenacted a closed party primary system, for five categories of office: United States Senate, United States House of Representatives, Louisiana Supreme Court, Board of Elementary and Secondary Education and Public Service Commission, redefining them as Party Primary Offices.

**Cause of action:** Article I Sec. 4 (Elections Clause) manipulation of election outcomes. See also, 18 U.S.C. § 20511 and 18 U.S.C. § 594 (fraud, intimidation) The act of redefining otherwise clearly defined federal offices, creates confusion for both the electorate and those desiring to be candidates. Defining them with the use of the word "Party" is particularly offensive to the Plaintiffs and establishes a fraud and/or deceptive precedent.

2. Under 2024 La. Acts 1 (First Extraordinary Session) unaffiliated voters may, "if allowed by party central committee", be afforded the opportunity to cast their vote, "only in one recognized party primary" See, Act No. 1, 2024 La. Acts 1.

**Cause of action:** 18 U.S.C. § 20511 and 18 U.S.C. § 594., electoral fraud, & deception, Article 1 Sec. 4 (Elections Clause) manipulation of election outcomes,1A- (Freedoms of Speech & Association), protects the rights of citizens to engage in political speech and association. 14A- (Equal protections), prohibits States from treating voters differently without justification. See Reynolds v. Sims, 377 U.S. 533 1964, the Supreme recognized voting as a fundamental political right.

3. Additionally, voters registered with third parties—such as the Libertarian Party, Green Party, or any other recognized or unrecognized party—are categorically excluded from any participation in party primary elections. See, Act No. 1, 2024 La. Acts 3.

**Cause of action:** Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes, Article III, (injuries-in-fact, causation, redressability), 1A- (Freedoms of Speech & Association) The segregation of voters and dilution of their strength, further impeded efforts to gain support, by way of signature, or future vote.

4. 2024 La. Acts 1, (First Extraordinary Session) further restricted unaffiliated and third-party candidates' access to the general election ballot by requiring the submission of nominating petitions signatures, with the critical limitation that only voters who are NOT registered with a recognized political party may sign those petitions, in the amounts of, one thousand for U.S. Representatives, from within the district and five thousand for, U.S. Senator, with five hundred minimum, from each Congressional District, to qualify for the General Election and must be completed prior to the qualifying period or conduct of a Party Primary Election.

**Cause of action:** Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes, Article III, (injuries-in-fact, causation, redressability), 1A- (Freedom of Association) See Jenness v. Fortson, 403 U.S. 431, 439, (1971): McCrary v. Poythress, 638 F.2d 1308 (5th Cir. 1981). 14A- (Equal Protection) This reenactment of law, discriminates upon almost a full third of Louisanans in manners, enacting numerous and complex provisions which create undue barriers and impediments to those seeking to gain elective federal office in 2026.

5. 2024 La. Acts 1, (First Extraordinary Session) makes no actual provisions to accommodate the qualifying of candidates not unaffiliated to a recognized party, rather it compels them to simply comply with provisions made for the Recognized Party candidates.

**Cause of action:** Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes, Article III, (injuries-in-fact, causation, redressability) See also 52 U.S.C. §10307, 18 U.S.C. § 20511and 18 U.S.C. § 594 (fraud, intimidation, threats) With no provisions made, unaffiliated candidates were obliged to comply with regulations and conform to requirements which impeded efforts and committed them to present and to certify false and/or deceptive, election information.

6. As of March 6th, 2026, As per State voting lists, 835,868 Louisiana voters (approx. 27% of the registered electorate) are neither Republican nor Democratic. These voters, including the Plaintiffs, are directly affected by restrictions imposed by 2024 La. Acts 1 (First Extraordinary Session). The first elections under HB 17 are scheduled for May 16th, 2026.

**Cause of action:** Article I, Sec. 4 (Elections Clause), diluting the Plaintiffs vote and discriminating against their candidacy, thereby conducting a manipulation of election outcomes. Article III (injuries-in-fact, causation, redressability), Plaintiffs forced to expend unnecessary funds to gain candidacy. 1A (Freedom of Speech & Association) Plaintiffs unable to exercise their vote, freely or to sign petitions of persons of their choice. 14A (Equal Protection) Plaintiffs denied equal ballot access based upon political affiliation. also denied full participation in the electoral process. Article IV Sec. 4 (Guarantee Clause), collectively enacted measures are exclusive to Louisiana and undermine electoral processes.

**B. 2024 La. Acts 640, (Regular Session)**

**1.** On June 11th, 2024 Governor Landry signed Act 640 into law and is responsible for the promulgation thereof. Act No. 640, 2024 9, provides that; "(a) There shall be a fall primary election held on the first Tuesday…" and that "This election date shall serve as the general election date for a party primary office to be elected in a Congressional election year.

(b) There shall be a fall general election held on the sixth…". See, 2024 La. Act 640 (Regular Session)

**Cause of action:** Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes, 52 U.S.C. §10307, 18 U.S.C. § 20511and 18 U.S.C. § 594 (fraud, procedural deception). Provisions are contradictory and deceptively promote bias against Plaintiffs and unaffiliated voters.

**C. Act 84, Reg. Sess. (Jul. 2025) "SB 84"**

1. Act 84 was signed into law on June 4th, 2025 by Governor Landry.

2. Secretary of State Nancy R. Landry published a news release on July 28th, 2025, announcing that "due to legislation passed in the 2025 Regular Legislative Session the Independent Party will cease to exist as a recognized party in Louisiana on August 1st, 2025. Voters registered as Independent will have their party affiliation automatically changed to No Party." See, official press release dated July 28th, 2025.

**Cause of action:** Article I Sec. 4 (Elections Clause) and Article III, (injuries-in-fact, causation, redressability) Plaintiffs incurred additional pocketbook injuries, traceable to Defendants actions. This Act and the administration thereof, impose a departure from precedent, contaminating the pool of voters qualified to nominate the Plaintiffs. See, Bost v. Illinois State Board of Elections, No. 24-568, 607 U.S.__(decided Jan. 14, 2026)and Article I Sec. 4 (Id.) ).

**D. Act 386, 1st Ex. Sess., (Jun. 2025) "HB 592"**

**1.** On June 20th, 2025 Governor Landy signed into law, HB 592 as Act 386, from the 2025 First Extraordinary Session HB 592, amends, repealsand supersedes, several Actsand provisions related to 2026 elections, exclusively. HB 592, redefines recognized political party as major political party (§410.1),

**Cause of action:** Article 1 Sec. 4, (Elections Clause), Article III (injuries-in-fact, causation, redressability), See also 52 U.S.C. §10307, 18 U.S.C. § 20511and 18 U.S.C. § 594 (fraud, intimidation, threats) This Act continues to perpetuate a fraud in a bias to promote either Major Party, at the expense of Plaintiffs who directly suffer reputational harm. This Act introduces a confusion to the electorate and Plaintiffs which serves no compelling state interest.

2. 2025 La. Acts 386 (Regular Session) limits voters not affiliated with a political party and their ability to participate in the 2026 recognized/major party primary elections. It provides that; If an unaffiliated voter chooses to vote in the first party primary of one political party, the unaffiliated voter shall not vote in the second party primary of another political party (§ 410.3 B., 410.8)

**Cause of action:** Article 1 Sec. 4, (manipulation of election outcomes), 1A (Freedom of speech & association), 14A (Equal Protections).

3. 2025 La. Acts 386 (Regular Session) limits the participation in party primary elections to only candidates affiliated with a major political party (§410.3).

**Cause of action:** Article 1 Section 4 (Elections Clause), Article III (injuries-in-fact, causation, redressability), 1A (Freedom of Speech & Association), 14A (Equal Protections) Act Requires Plaintiffs to qualify for an election they by affiliation, are prohibited from participation in. Dilutes voter strength and impedes ballot access. See, (§410.1, 410.8)

**E. Act 495 (HB 342), of the 2025 regular legislative session**

1. This Act became law without the Governor's signature on July 1st, 2025and went into effect on August 1st, 2025. Administered and implemented by Nancy R. Landy in her official capacity as Secretary of State. This law altered both fees and numbers of nominating petition signatures required for certain statewide elective offices, including U.S. Representative and U.S. Senator.

**Cause of action:** Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes, Article III, (injuries-in-fact, causation, redressability) Arbitrary and cause for confusion to electorate.

**F. The Election Date Delay Law — Act 1, 1st Ex. Sess. (Oct., 2025) Senate Bill 1**

**1.** On October 30th, 2025, Governor Landry signed La. Acts 1, 2024 (First Extraordinary Session) into law. This Act pushed Louisiana's 2026 spring primary elections back from April 18th, 2026 to May 16th, 2026 and the runoff from May 30th, 2026 to June 27th, 2026. It was enacted during a special session called by the Governor to address redistricting matters in anticipation of the U.S. Supreme Court's forthcoming decision in *Louisiana v. Callais*. The Act

additionally stipulates a specific date for the timely gathering of nominating petition signatures and designates broad powers to the Secretary of State in Paragraphs D. (1) and (2), to: "make necessary changes to any rules.." and provides that the Secretary of State may proceed with emergency rulemaking pursuant to R.S. 49:962 if necessary to implement the provisions of this Part." See, Act No.1, 2025 La. Acts 3.

**Cause of action:** Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes, Article III, (injuries-in-fact, causation, redressability) This Act introduces additional arbitrary changes in election dates and the related requirements imposed, disproportionately and particularly burdensome to Plaintiffs, their supporters and any unaffiliated persons desiring to be candidates in 2026, for federal legislative offices. Plaintiffs attempted to remedy their ballot access concerns and injuries directly with the Secretary of State on February 13th, 2025, to no avail.

## G. Louisiana Governor issues Proclamation #79 on 12/23/2025

Wherein Section 8, it provides for both an arbitrary reduction in nominating signatures required and an extension of time afforded to acquire them, to non-recognized party, persons desiring to qualify for certain offices, included among those scheduled for the party primary elections.

**Cause of action:** Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes, Article III, (injuries-in-fact, causation, redressability) Governor Landry demonstrates arbitrary enforcement. This action provided supporters of the Plaintiffs and unaffiliated qualified voters with a source of confusion and/or a false sense of security, concerning requirements imposed on qualifications for the federal offices, sought by Plaintiffs and further burdens to ballot access.

**G. Collective & Cumulative Acts and their provisions related to Federal Elections-(2024-2025)**

1. Louisiana State officials under color of law, have promulgated the several Acts challenged herein, containing a multitude of both new and reenacted provisions of election laws, relevant to Federal Congressional offices. Provisions, which impose requirements that exceed those specified in Article I Section 2, violate restrictions of Article I Section 4, settled law respective to the First and Fourteenth Amendments and the Voting Rights Act.

2. 2025 La Acts 386 (Regular Session), specifically jeopardizes the outcomes of Louisiana's 2026 Federal Elections and is rife with vagueries, and language which borders upon fraud. It's §410.2 410.3 particularly infringe and undermine the electoral process, by ways of intimidation or creating bias, a dilution of voters' strength, and arbitrary partial inclusions or exclusions from participation in the elections to and/or for their States' U.S. Congressional offices.

**Cause of action:** The cumulative effects of provisions enacted through the Acts challenged herein, establish barriers to qualifying for candidacy for the federal offices of U.S. Senator and U.S. Representative. These collective efforts constitute a fundamental invasion upon the Constitution and the legal qualifications prescribed. These violations are traceable to Defendant's actions over the course of several legislative sessions and constitute an undermining of electoral processes. These violations, which historically, have only ever been imposed by the State of Louisiana, See, Campbell v. Hull, 73 F. Supp. 2d 1081, 1092 (D. Ariz. 1999) and this compels the Plaintiffs to assert a violation of Article IV Section 4, Guarantee Clause.

## IV. LEGAL BASIS FOR CLAIM
## & PARTICULARIZED INJURIES

### A. Legal Basis for Claim upon which Relief can be Granted

1. A complaint is frivolous under 28 U.S.C. § 1915(e)(2)(B) only if it "lacks an arguable basis in law or fact." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

2. A complaint fails to state a claim only when it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> Pro se complaints are held to "less stringent standards" and must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Plaintiffs' claims satisfy both standards.

### A. Article I Section 4 Violations- Elections Clause

1. The several legislative Acts provide that there shall be no third party elections and requires unaffiliated persons desiring to become candidates to do so as if they were participating in the recognized or major party primary elections. Imposing requirements that fail The

Anderson-Burdick Balancing Test. Under Anderson v. Celebrezze, 460 U.S. 780 (1983), courts must evaluate:

A. the character and magnitude of the burdens imposed on Constitutional rights.

B. the interests asserted by the State to justify those burdens. In Burdick v. Takushi, 504 U.S. 428 (1992), the Supreme Court reaffirmed that severe burdens on voting rights must be narrowly tailored to advance a compelling state interest. These actions manipulate outcomes of the 2026 federal elections to the benefit of major political parties and their leaders.

2. The several Acts promulgated which restrict and limit the participation of non-major party voters and/or candidates, constitute a manipulation of outcomes of elections to benefit the major political parties. 2025 La. Acts 386 (Regular Session) is a continuation of departures from the preordained rules, visiting confusion upon both persons desiring to be candidates and voters alike. Lacking for any compelling state interests, provisions create impediments to ballot access. §410.1, 410.2, 410.3(B), 410.4(B), 410.8 are discriminatory and violate Article 1 Sec. 4 (Elections Clause) manipulations of election outcomes.

3. 2025 La. Acts 495 (Regular Session) increases qualifying fees for federal legislative offices arbitrarily in violation of Article I Section 4 (Elections Clause) manipulating outcomes of elections. These increases serve no compelling state interests and arbitrarily establish greater barriers to ballot access. Additionally, Louisiana law exempts any active deployed eligible service members from any fees or nominating petitions requirements whatsoever. See, 2012 La. Acts 778 (Regular Session). If any citizen can be exempted from arbitrary nominating petition impediments and financial barriers, then any otherwise eligible person should be afforded the

same or a similarly comprehensible and achievable path, lest the provisions violate or come into conflict with the 14th amendment (equal protection).

4. Furthermore 2025 La. Acts 386, §1310, at 43-45 provisions depart from rules relating exclusively to 2026 federal elections. The provisions establish arbitrary, if only temporary conditions to manipulate election outcomes, disenfranchise voters and persons desiring to be candidates.

5. Plaintiffs injuries related to Elections Clause violations for which relief can be granted; include but are not limited to, Plaintiffs as candidates are not merely bystanders to the electoral process and are particularly invested in the integrity of outcomes and the harms incurred have been concrete in nature, where the efforts to fulfill their civic duty has been impeded.

**B. Article III - Injuries-in-fact, Causation, Redressability**

1. The several Acts and related enforcement actions designated in this complaint have caused both, traceable pocketbook injuries and irreparable reputational harm to Plaintiffs. These injuries persist and threaten to cause greater harm, eminently. Both as Candidate and campaign manager, Plaintiffs, since their first effort 2019, have invested several years and thousands of dollars establishing a grassroots campaign to redress legislative governance and were required to expend unnecessary funds in their attempts to comply with the several complex and shifting requirements imposed upon them by Defendants actions, under color of law.

2. Specifically, HB 342 alters the requirements for the number of signatures required for federal legislative office elections, reducing them arbitrarily for both U.S. Senator and U.S. Representative, while maintaining restrictions related to Congressional district boundaries and requirements of signatures from the same. These provisions constitute a departure from ordained practices and its promulgation has had traceable impacts upon Plaintiffs which violate Article III (injuries-in-fact, causation, redressability), see; Bost v. Illinois State Board of Elections, No. 24-568, 607 U.S.___(decided Jan 14th 2026) at__(slip op. at 6 & 9-10) "Each runner in a 100-meter dash, for example, would suffer if the race were unexpectedly extended to 105 meters. Whether a particular runner expects to finish strong or fall off the pace in the final five meters, all would be deprived of the chance to compete for the prize that the rules define. The fastest to run the 105 meters has not won the 100 meter dash. And in much the same way, an unlawful extension of vote counting deprives candidates of the opportunity to compete for election under the Constitution and laws of the United States."

3. Additionally, On July 28th, 2025 Secretary of State, Nancy Landry issued a press release, notifying the public of the ramifications related to Act 84. This Act as promulgated, automatically changed the affiliations of 150,654 Independent Party registered voters to No Party affiliation, effective Aug. 1st 2025. With provisions stipulating that nominating signatures gathered after September 16th, 2025 are to be considered timely, to satisfy the qualification of a

No Party candidate in the November 3rd, 2026 General Election. Act 84, effectively contaminated the pool of citizens otherwise determinedly registered as No Party voters.

4. Furthermore, Governor Landry' s Proclamation provided for an arbitrary reduction in numbers of signatures required and an extension in time available for unaffiliated candidates to qualify for a special emergency election. This action demonstrates selective enforcement and additionally confused the electorate. While further burdening Plaintiffs by misleading both supporters and any other persons qualified to nominate them, that unaffiliated persons desiring to be Party Primary Election Candidates, had been granted more time and a lowered threshold for purposes of qualifying as candidates with ballot status. This was the first notable public mention of the various burdens imposed by the Defendants under color of law, that otherwise eligible Louisianans faced, if unaffiliated and wished to pursue candidacy for federal office in 2026. The deadline for submission of nominating petitions for the Plaintiffs was January 14th, 2026.

5. Plaintiff injuries related to Governor Jeff Landrys' Proclamation #79 Sec. 8, issued on December 23rd, 2025, for which relief can be granted include but are not limited to Article III injuries-in-fact, as Plaintiffs faced undue impediments traceable to this arbitrary action which created confusion for supporters and the electorate, requiring a greater investment in time and resources to mitigate for. As this was the first notable effort on the part of Defendants to publicly inform Louisiana citizens of the complex operations promulgated through the several legislative instruments and provisions and imposed exclusively upon those persons not affiliated to a major recognized party, with negligible action taken to clarify the conditions applicable or related to those pursuing candidacy for federal office, the burden to do so has been the Plaintiffs.

6. Plaintiffs Article III injuries for which relief can be granted include but are not limited to the pocketbook injuries (the purchasing of segregated voters lists, travel, website and campaign paraphernalia costs) related to the development of a campaign, specifically for candidacy rather than to merely offset the expenditure of a qualifying fee and which required navigating provisions that created unconstitutional barriers to ballot access. These include but are not limited to, a discriminated and contaminated pool of voters qualified to nominate Plaintiffs, confusing and arbitrary requirements, related to the submission of qualifying nominating petitions. Reputational harms remain irreparable, however the injuries incurred from, can be relieved by the Court.

**C. First Amendment Violations- Freedoms of Speech & Association**

1. Election regulations are evaluated under the *Anderson-Burdick* balancing test. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). Where a law imposes "severe" burdens on First Amendment associational rights, strict scrutiny applies.

2. The several Acts and related enforcement actions, designated in this complaint, impose severe burdens in several ways. The legislative instruments categorically exclude third-party voters and unaffiliated candidates from full participation in primary elections—an exclusion that the Supreme Court has treated as constitutionally suspect. See *Williams v. Rhodes*, 393 U.S. 23 (1968), also See Munro v. Socialist Workers Party, 479 U.S. 189, 198 (1986).

3. Defendants' promulgation of the several Acts, designated in this complaint, prohibit recognized-party voters from signing nominating petitions for unaffiliated candidates, restricting core political expression. See Campbell v. Hull, 73 F. Supp. 2d 1081, 1090 (D. Ariz. 1999) and See also Jenness v. Fortson, 403 U.S. 431, 439 (1971); McCrary v. Poythress, 638 F.2d 1308 (5th Cir. 1981).

4. Finally, while allowing voters to participate in party primary elections, the legislative Acts strictly limit them to voting in only one recognized party primary, diluting their voting strength. See; Thornburg V. Gingles, 478 U.S. 30 (1986), the Supreme Court held that election laws diluting strength, violate the Act.

5. First Amendment related, particularized Injuries to Plaintiffs, for which relief can be granted include but are not limited to, the denial of constitutionally protected, full participation in the electoral process, ballot access, reputational harms incurred by the traceable actions of Defendants.

**D. Fourteenth Amendment Violations- Equal Protection Clause (42 U.S.C. § 1983)**

1. Because voting is a fundamental right, classifications restricting the franchise receive heightened scrutiny. *Kramer v. Union Free School Dist.*, 395 U.S. 621 (1969).

The several Acts effectively create three unequal tiers of voters: (a.) major-party members who enjoy full primary access; (b.) unaffiliated voters who may, if allowed by the party central committee, vote in only one recognized party primary election. (c.) third-party voters who are excluded from all primaries. This tiered system denies equal protection to Plaintiffs, who fall into the (b.) category.

2. Defendants' actions, permitting unlimited objections without standing and arbitrary rule changes violate procedural due process, lacking fair notice and opportunity to be heard. See Mathews v. Eldridge, 424 U.S. 319 (1976)

3. Fourteenth Amendment related, particularized Injuries to Plaintiffs, for which relief can be granted include but are not limited to, the segregation of themselves by political affiliation, where it directly affects and impedes their ballot access, the mandated invasion of the political associations of citizens for the purposes of gaining candidacy, forced Plaintiffs to compromise the privacy of both previous supporters and potential constituents alike, causing irreparable reputational harms.

**E. Voting Rights Act of 1965- Eliminating Discriminatory Voting Practices**

**1.** 2025 La Acts 1, (First Extraordinary Session) raises a separate equal protection concern. When the delay of election dates is motivated by discriminatory racial purposes—here, to enable elimination of majority-Black congressional districts—strict scrutiny applies. *Village of Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252 (1977). Evidence of discriminatory intent includes: (a) the legislation's explicit connection to the *Callais* redistricting case; (b) public statements by legislators identifying the bill's racial impact; (c) the near-perfect party-line vote; and (d) the departure from normal legislative procedure through a special session.

2. Additionally, 2025 La. Acts 1 (First Extraordinary Session) alters the standard practices of district boundaries for purposes of completing, qualifying nominating petitions and introduces special one-time only provisions, for federal elections, upsetting established norms, diluting the strength of and confusing qualified voters, which created a greater impediment to unaffiliated persons desiring to be candidates and in violation of the Voting Rights Act of 1965.

3. Plaintiff Hyers is registered as No Party in Jefferson Parish, Louisiana. Under HB 17, he is categorically barred from voting in, but one recognized party primary election for U.S. Senate, U.S. House, Louisiana Supreme Court, BESEand Public Service Commission beginning with the May 16, 2026 elections. This constitutes a direct infringement of his fundamental right to vote in elections. in violation of Section 2 of the Voting Rights Act (52 U.S.C. § 10301)

**F. Article IV Section 4- Guarantee Clause**

1 A district court in Arizona while addressing similar legislation in Campbell v. Hull, 73 F. Supp. 2d 1081, 1092 (D. Ariz. 1999), did not shy away from Louisiana's poor ballot access record, the court held that, "Arizona may not require voters to change their party affiliation as a condition of nominating independent or minor party candidates." 2024 La Acts 1 (First Extraordinary Session) will have this same effect, as voters would need to change their party affiliation before they can support a nominating petition for a differently-affiliated candidate. The Campbell court further stated, "Historically in Louisiana and Arizona this restriction 'freezes' the status quo by effectively barring all candidates for national office other than those of the major parties." Campbell observed that Louisiana had not maintained this unconstitutional restriction since 1949.

2. While republican form may remain a political question, the obligations of this guarantee, by definition falls upon, ourselves, the people and to our posterity, whom by definition are, "The United States". In his official capacity as the first Secretary of State, of the United States, Thomas Jefferson, conveyed the following concerns related to the issues at hand in his official capacity as the first Secretary of State to the first President, "No Invasions of the constitution are so fundamentally dangerous as the tricks played on their own numbers, apportionment and other circumstances respecting themselves and affecting their legal qualifications to Legislate for the union." See, National Archives, Secretary of State, Thomas Jefferson opinion rendered to President George Washington, April 4th, 1792.

3 Plaintiffs have suffered concrete injuries as their campaigns to redress a guarantee of republican form have been barred from the venue wherein, it's prescribed to remain unfettered and justiciable, by the people for ourselves and our posterity.

**D. Summary of Concrete and Particularized Injuries of Plaintiffs**

1. To establish standing, a plaintiff must show (a.) an injury in fact that is concrete, particularized and actual or imminent; (b.) that the injury is fairly traceable to the defendant's challenged conduct; and (c.) that the injury is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

2. Plaintiffs suffer the following concrete injuries, each directly traceable to Defendants' actions in signing and/or promulgating the following; 2024 La. Acts 1, (First Extraordinary Session), 2024 La. Acts 640, (Regular Session), 2025 La. Acts 84, (Regular Session), 2025 La. Acts 386,

(Regular Session), 2025 La. Acts 495, (Regular Session), 2025 La. Acts 1, (First Extraordinary Session) and Governor Landrys' Proclamation #79, section 8, issued on December 23rd, 2025.

3. Both Plaintiffs have suffered pocketbook injuries in the amount of approx. $700.00 (special voters lists, travel costs, paraphernalia, + lost wages) and irreparable reputational harm, as a direct and traceable consequence of defendants' actions

**E. Injuries Particular to Plaintiff, Mr. Hyers**

1. Plaintiff Hyers intends to run as a candidate for U.S. Senator in 2026. Under 2024 La. Acts 1, (First Extraordinary Session), he was required to collect 5,000 petition signatures (minimum 500 from each of 6 Congressional districts) and solely from voters not registered with a recognized political party, 2025 La. Acts 495, (Regular Session), reduced the number required to 2,500, with a minimum of 250 per congressional district and provisions of 2025 La. Acts 1 (First Extraordinary Session), yet again the rules were arbitrarily manipulated, removing the Congressional district requirements, in anticipation of a ruling related to gerrymandered districting—these actions further prejudiced an already discriminated and contaminated pool of voters from which Plaintiffs were permitted to gather nominating signatures, of approximately 27% of the electorate. These restrictions make ballot access practically impossible and effectively bar him from campaigning for legislative office despite meeting all qualifications under Article I, Section 2 of the U.S. Constitution. See, Act No.1, 2024 La. Acts 5-6, Act No. 495, 2025 2.

2. As the Only 2024 No Party qualified congressional candidate, Plaintiff Mr. Hyers is particularly vulnerable to reputational harm as a consequence of the reckless and unconstitutional provisions being promulgated by the State of Louisiana, its Governor and Sec. of State, in their official capacities, as He is likely and has already endured accusations of undermining the will of Republican party voters, among other injuries and these concerns are warranted. See, Act No. 1, 2024 La. Acts 3-6

3. Plaintiff, Mr. Hyers, has suffered concrete pocketbook injuries, directly traceable to the legislative instruments noted in this complaint, including all costs related to the development of a 'campaign for candidacy', through the acquisition of voters wet mark signatures, only. Plaintiffs were compromised unjustly in how they were positioned to appeal for nomination, for they could not make the same plea as Major Party Candidates, or as they had in three previous campaigns, ie."I will be a candidate and your nominating signature will merely spare our Candidacy the Qualifying fee and provide for a boost to campaign funds". See, 2024 La. Acts 1 (First Extraordinary Session), See also 14th Amendment (equal protection) 42 U.S.C. § 1983.

4. Additionally, Plaintiff Mr. Hyers has suffered both pocketbook expense, injuries and irreparable reputational harm as he was required, by State law, to confirm and/or voters' political affiliations in violation of 1A- (Freedom of Association) 42 U.S.C. § 1983 and Article III (injuries-in-fact, causation, redressability)

5. Furthermore, Plaintiff Mr. Hyers faced threats and intimidation while attempting to submit nominating petitions due to inaction on the part of Defendants. Those responsible for promulgation made no notable effort to mitigate for the confusion which the multitude of provisions created for both Plaintiffs and several Registrar of Voters offices. Plaintiff, Mr. Hyers, incurred pocketbook, reputational, dignitary and procedural injuries. See, 2024 La. Acts 1 (First Extraordinary Session), and subsequent legislative Acts.

**E. Injuries Particular to Plaintiff, Ms. Glass**

1. Plaintiff Glass is registered as No Party in Jefferson Parish, Louisiana. She intends to campaign for the office of U.S. Representative to serve Louisiana' s 1st Congressional District in 2026. Plaintiff Glass attempted to gather an unachievable threshold of nominating signatures under the same conditions as Plaintiff Mr. Hyers. Restricted to a compromised and discriminated pool of qualified voters, to acquire nominating signatures from , made these provisions for qualifying, insurmountable.

2. Both Plaintiffs have suffered pocketbook injuries in the amount of approx. $700.00 (special voters lists, travel costs, paraphernalia, + lost wages) and irreparable reputational harm, as a direct and traceable consequence of defendants' actions.

## IV. PRAYER FOR RELIEF

1. WHEREFORE, Plaintiffs pray that the Court:

   a. Issue a Declaratory judgement that HB 17 and provisions of the several associated Acts, listed within this complaint, which relate directly to the 2026 election of U.S. Senators and U.S. Representatives, violate The Voting Rights Act and/or Articles of the U.S. Constitution.

   b. Issue a TRO and preliminary injunction enjoining Defendants from enforcing provisions of HB 17 and applicable Acts listed, where they apply to 2026 Federal Elections, specifically those provisions which allow for unaffiliated voter participation in otherwise, closed party primaries to prevent the reputational harm, Plaintiffs are particularly vulnerable to, being Scapegoated or blamed for the manipulation of election outcomes and until adjudication. While this action will leave unaffiliated voters disenfranchised from meaningful participation in the party primary elections, it would preserve the legitimate outcomes for major party voters and therefore becomes a lesser of evils, suffered upon Louisiana voters.

   c. Issue permanent injunction barring enforcement of the challenged rules' or reenacted revised statutes. Specifically, striking down those that prohibit the exercise of qualifying by fee, for those persons, otherwise eligible and not registered to a major party, restore the qualifying rules and dates for U.S. Congressional Candidates, to their conditions prior to the passage of HB 17.

   d. Award costs and any other relief deemed just, pursuant to 42 U.S.C. § 1988

e. Establish that Article IV Section 4 (Guarantee Clause) requires that federal ballot access be unfettered and laws related to candidacy, qualifications to legislate, or the electoral process are safeguarded by the Article.

## V. CONCLUSION

1. Plaintiffs' claims have an arguable basis in both law and fact. From HB 17's categorical exclusion of third-party voters from all primaries, through the several Acts challenged, including SB 1's racially motivated election-date manipulation, raise substantial constitutional questions that warrant judicial review. The simultaneously filed Amended Complaint cures the deficiencies identified by the Court by setting forth specific factual allegations, identifying concrete injuries and explaining how each Defendant's actions violate each constitutional provision. Plaintiffs respectfully request that the Court accept the Amended Complaint and permit this action to proceed.

Respectfully submitted,

Date: 03/13/2026

Jon F. Hyers, Plaintiff, *Pro Se*

**509 Houma Blvd.**

**Metairie, LA. 70001**

**504-478-3254**

**Jonfrankiehyers@gmail.com**

Elizabeth R. Glass, Plaintiff, *Pro Se*

**509 Houma Blvd.**

**Metairie, LA. 70001**

**504-657-8199**

**Liddyswork@gmail.com**

Dated: 03|13|2026

---

## CERTIFICATE OF SERVICE

I hereby certify that summons has not yet issued in this matter. No service upon Defendants is required at this time. A copy of this Memorandum and the accompanying Amended Complaint will be served upon Defendants upon issuance of summons by the Court.

Date: 03/13/2026

Jon F. Hyers

Jon F Hyers
509 Houma blvd.
Metairie, LA 70001
504-478-3254
Jonfrankiehyers@gmail.com

Elizabeth R Glass
509 Houma blvd.
Metairie, LA 70001
504 657-8199
Liddyswork@gmail.com