U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED | Jun 2 2026

CAROL L. MICHEL
CLERK

bwn                    Walk-In

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JON F. HYERS and** | **CIVIL ACTION** |
| **ELIZABETH R. GLASS,** | **NO. 26-286** |
| Plaintiffs, | **SECTION "R" (3)** |
| v. | District Judge Sarah S. Vance |
| | Magistrate Judge Eva J. Dossier |
| **NANCY R. LANDRY,**<br>Louisiana Secretary of State,<br>in her official capacity, | |
| Defendant. | |

---

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### PRELIMINARY STATEMENT

On May 11, 2026, this Court entered R. Doc. 15, adopting Magistrate Judge Dossier's Report and Recommendation (R. Doc. 12) and dismissing Plaintiffs' original complaint without prejudice, granting thirty days to file this First Amended Complaint. This First Amended Complaint directly addresses the Court's dispositive holding that the original complaint made no claims about Secretary Landry by pleading specific and detailed allegations against her and her direct enforcement connection to the challenged statutes.

Three days after this Court's dismissal Order, on May 14, 2026, Governor Jeff Landry signed Act 7 of the 2026 Regular Session. Act 7 cancels the May 16, 2026 U.S. House of Representatives primary elections and moves House races to the November 3, 2026 open primary, adjusting

1

petition thresholds and signer eligibility for House candidates only. Act 7 does not alter any aspect of the challenged framework as applied to U.S. Senate candidates, does not address the fee architecture applicable to either office, does not cure the compelled false certification on nominating forms, and does not address standardless and inconsistent parish-level administration. Its deliberate House-only scope confirms the severity of the burdens it declines to fix for Senate candidates.

On May 16, 2026, the day of the primary elections, both Plaintiffs appeared at their polling place and were required to execute a compelled temporary declaration of Republican Party affiliation, signing under duress, in order to receive a full ballot and participate in the U.S. Senate race. This compelled affiliation is the precise ongoing injury Plaintiffs challenge in this action.

Plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. Section 1983 and the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. Sections 1331 and 1343(a)(3) and (4), as this action arises under 42 U.S.C. Section 1983 and the First and Fourteenth Amendments to the United States Constitution.

2. Venue is proper in this district under 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Jefferson Parish, Orleans Parish, and St. Bernard Parish, all within this District, and because Defendant performs official duties affecting this District.

3. This Court has authority to grant declaratory relief under 28 U.S.C. Sections 2201 and 2202 and injunctive relief under Federal Rule of Civil Procedure 65.

## PARTIES

4. **Plaintiff Jon F. Hyers** is a resident of Metairie, Jefferson Parish, Louisiana, registered as a "no party" voter, residing at 509 Houma Blvd., Metairie, Louisiana 70001. He served as a 2020 Decennial Census clerk and took an oath to support and defend the Constitution. He ran as a non-recognized-party candidate in Louisiana's 1st Congressional District in 2024, having transitioned from Republican registration to "no party" registration by mid-May 2024 in advance of the opening of the 2024 signature-gathering period, receiving 6,781 votes with the highest percentage voter turnout statewide in his race across all federal offices including the 2024 presidential race. He has personally underwritten and built grassroots campaign infrastructure since 2019. He is a declared candidate for United States Senate in the 2026 election cycle.

5. **Plaintiff Elizabeth R. Glass** ("Liddy") is a resident of Metairie, Jefferson Parish, Louisiana, registered as a "no party" voter, residing at 509 Houma Blvd., Metairie, Louisiana 70001. She has served since 2019 as campaign manager and organizer for Plaintiff Hyers through three campaigns for legislative office. She is a declared candidate for United States House of Representatives, Louisiana's 1st Congressional District, in the 2026 election cycle. She was also

commissioned as a Louisiana Election Commissioner; the circumstances of that commission and her refusal to serve under it are described in paragraphs 42 through 48 below.

**6. Defendant Nancy R. Landry** is the Louisiana Secretary of State and is sued in her official capacity. She is the chief election officer of the State of Louisiana, La. R.S. 18:18, responsible for: promulgating and distributing Forms QF-42 and NP-44-OES; certifying and publishing the qualifying fee schedule; maintaining the statewide voter registration database; providing standards to parish registrars of voters for signature verification and petition processing; administering instructions to parish registrars; providing public notice of the qualifying process; certifying candidate qualifications; and administering the primary elections in which Plaintiffs were compelled to declare temporary party affiliation. Her enforcement connection to the challenged statutes and practices is direct, specific, and ongoing. She is a proper defendant under *Ex parte Young*, 209 U.S. 123 (1908), and *Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020).

## FACTUAL ALLEGATIONS

### A. HB 17 and the Bifurcated Ballot

**7.** Before HB 17 (Act 1, First Extraordinary Session 2024), Louisiana operated a single open primary for all federal and state offices. Any qualified voter could vote for any qualified candidate, regardless of party affiliation, on a single unified ballot.

**8.** HB 17 created a semi-closed hybrid primary for United States Senate, United States House of Representatives, the Louisiana Supreme Court, the Public Service Commission, and the Board of Elementary and Secondary Education, while preserving the open primary for state and local offices. HB 17 is the primary statutory target of this action; subsequent legislative acts that compound and implement its operation are pleaded in paragraphs 15 through 23 below.

**9.** Under HB 17, recognized-party voters participate freely in their party's primary for the affected offices. Non-recognized-party voters (Libertarian, Green, and others) are categorically excluded from meaningful primary participation in those offices. "No party" voters may participate only by temporarily affiliating with a recognized political party, conditioning their participation on a party affiliation they have specifically declined to claim. The result is a three-tier voter structure: recognized-party voters who participate freely; "no party" voters who may participate only by compelled temporary affiliation; and other non-recognized-party voters who are categorically excluded.

**10.** The same voter, on the same ballot, on the same day, may vote in state and local races under the open primary without any party affiliation requirement, but is forced to temporarily affiliate with a recognized political party to participate meaningfully in federal congressional, Public Service Commission, Supreme Court, and BESE races under HB 17. This bifurcated treatment of voters based on which office appears on the ballot is the operational core of the constitutional injuries pleaded below.

3

## B. The Qualifying Forms and Compelled False Certification

11.    Secretary Landry prescribes the Notice of Candidacy form (Form QF-42) and the Nominating Petition form (Form NP-44-OES) that all non-recognized-party candidates must complete to qualify for the ballot. Both forms contain certification language that is facially false as applied to non-recognized-party candidates seeking ballot access for the November 3, 2026 General Election.

12.  On February 13, 2026, both Plaintiffs presented themselves to qualify on the final day of the qualifying period. The pre-printed Form QF-42 required each Plaintiff to certify participation in a "primary" election scheduled for May 16, 2026, from which non-recognized-party candidates are categorically barred. The pre-printed Form NP-44-OES contains analogous primary-only certification defects.

13.  A representative of Secretary Landry's office acknowledged this deficiency on February 13, 2026. With the representative's permission, Plaintiff Hyers crossed out the word "Primary," wrote "General," and changed the election date to November 3, 2026, on his own forms and on Plaintiff Glass's forms. True and complete copies of the altered forms are attached as Exhibits D (Hyers) and E (Glass).

14.  Jefferson Parish refused to certify the altered Nominating Petition forms (NP-44-OES) and demanded that Plaintiffs revert the alterations to the original false primary certification as a condition of verifying nominating petition signatures. Other parishes, including Orleans, St. Bernard, and Ascension, accepted the altered nominating petition forms. The same pre-printed defect on Form NP-44-OES was thus treated differently across four parishes between January 12, 2026 and the January 14, 2026 deadline for submission of nominating petitions to parish registrars' offices for verification.

## C. The Layered 2024-2026 Statutory Framework

15.  HB 17 does not operate in isolation. The Louisiana Legislature has, in the period between June 2024 and May 2026, enacted at least six interconnected statutes that together govern qualifying for federal congressional and other affected offices in 2026, including: (a) Act 640 (HB 873, Regular Session 2024) (the omnibus elections act amending dates, definitions, dual candidacy provisions, and qualifying procedures); (b) Act 495 (HB 342, Regular Session 2025) (increasing qualifying fees and modifying nominating petition signature requirements); (c) Act 84 (Regular Session 2025) (dissolving the Independent Party effective August 1, 2025, and triggering the mass voter reclassification described in paragraph 31 below); (d) Act 386 (Regular Session 2025) (further modifying HB 17); (e) Act No. 1, First Extraordinary Session 2025 (SB 1) (establishing special signature thresholds for 2026 elections under Section 419.2(B)(2)); and (f) Act 7 (Regular Session 2026) (signed May 14, 2026, making targeted House-only adjustments as described in paragraphs 20 through 23 below).

16.  The operative signature thresholds for Plaintiffs' 2026 candidacies are: (i) for a candidate for United States Representative, two hundred fifty (250) signatures from any qualified voters statewide under Act 7's revised House framework; and (ii) for a candidate for United States

4

Senator, two thousand five hundred (2,500) signatures from voters NOT registered with a recognized political party under Act No. 1, First Extraordinary Session 2025, SB 1, Section 419.2(B)(2). The Senate threshold is unchanged by Act 7.

17. Act 495 of the 2025 Regular Session materially increased Louisiana qualifying fees for federal congressional offices. For the 2026 cycle, the qualifying fee for U.S. Senator is $3,500.00, increased from a prior baseline of $600.00 (the same prior baseline as the U.S. House qualifying fee), representing an increase of approximately 483 percent, nearly a fivefold increase. The qualifying fee for U.S. Representative is $1,500.00, increased from a prior baseline of $600.00, representing an increase of 150 percent. These increases were imposed in the same legislative cycle in which HB 17 Section 410.4(B) categorically barred non-recognized-party candidates from accessing the fee path for both offices. The increases compound an exclusion rather than creating a barrier that could theoretically be overcome.

18. The complete 2026 qualifying fee architecture for recognized-party candidates is as follows: U.S. Senator: qualifying fee $3,500.00 plus party state central committee fee $1,750.00 plus $25.00 sign recycling fee, total $5,275.00; U.S. Representative: qualifying fee $1,500.00 plus party state central committee fee $750.00 plus $25.00 sign recycling fee, total $2,275.00 (Exhibit H). Non-recognized-party candidates are subject to zero fees and have zero fee-path access for either office: petition only. While recognized-party candidates may qualify by paying the applicable fee package, non-recognized-party candidates are categorically excluded from this path regardless of financial ability or willingness to pay. The fee increases imposed by Act 495 thus compound a structural exclusion: they raise the cost of the party-affiliated path while the non-party path remains categorically foreclosed. *See Speiser v. Randall*, 357 U.S. 513, 518 (1958).

19. The post-Act-495 fee architecture compounds the structural disadvantage of non-recognized-party candidates. The combined fee burden for U.S. Senate candidates ($5,275.00) represents a substantial absolute barrier even for recognized-party candidates of ordinary means. For non-recognized-party candidates, the fee path is foreclosed entirely under HB 17 Section 410.4(B) for both offices, confirmed directly by the Secretary of State's Elections Division. The petition path remains the only theoretically available alternative for non-recognized-party candidates, but for the reasons set forth in paragraphs 27 through 36 below, the petition path is structurally unattainable. The cumulative effect is a wealth and party-affiliation test on candidacy that fails the standards set forth in *Lubin v. Panish*, 415 U.S. 709, 718 (1974), and *Bullock v. Carter*, 405 U.S. 134, 144 (1972).

### D. Act 7 of the 2026 Regular Session: Partial and Deliberate Fix

20. On May 14, 2026, three days after this Court's dismissal Order, Governor Jeff Landry signed Act 7 of the 2026 Regular Session. Act 7 cancels the May 16, 2026 and June 27, 2026 U.S. House of Representatives primary elections, moves House races to the November 3, 2026 open primary, creates a new qualifying period of August 5 through 7, 2026, reduces the House nominating petition signature threshold to 250 from any qualified voters statewide regardless of party registration, and cancels previously-submitted U.S. House nominating petitions. Act 7 also

provides for refund of the state portion of qualifying fees paid by U.S. House candidates for the cancelled elections.

21. Act 7 does not alter, modify, or address any aspect of the challenged framework as applied to U.S. Senate candidates. The fee-path categorical bar for non-recognized-party Senate candidates remains in force. The 2,500-signature threshold for Senate candidates remains in force. The restriction of Senate nominating petition signers to party-registered voters only remains in force. The compelled false certification on Forms QF-42 and NP-44-OES remains in force. The bifurcated-ballot structure that conditions Senate primary participation on a compelled temporary party affiliation declaration remains in force. The standardless and inconsistent parish-level administration remains in force. Act 7 also did not open the fee path for non-recognized-party House candidates. While the Defendant's, May 14, 2026, Media Release (Exhibit I) states, "Potential candidates may qualify for the U.S. House race either by paying the required qualifying fee or by nominating petition", the Secretary of State's Elections Division has confirmed: no fee path exists for non-Republican and non-Democratic candidates for any federal office. Petition only.

22. Act 7's deliberate House-only scope constitutes a legislative concession that the petition and signer-pool burdens were severe enough to require a statutory remedy for House candidates, while the same or greater burdens imposed on Senate candidates were deliberately left uncorrected. The legislature demonstrated its capacity to address these burdens and chose not to do so for Senate, foreclosing any "responsive legislature" defense by the State. The State's own characterization of Act 7 as restoring a traditional open primary for House races is contradicted by the continued closure of the fee path to non-recognized-party House candidates. Even after Act 7, no fee path exists for non-recognized-party candidates for any federal office. The traditional open label overstates the scope of Act 7's remedial effect and reinforces that the legislative fix was deliberately incomplete.

23. Act 7 creates a new Equal Protection dimension. For the 2026 cycle, non-recognized-party U.S. House candidates may gather 250 signatures from any qualified voter statewide regardless of party registration. Non-recognized-party U.S. Senate candidates must gather 2,500 signatures exclusively from voters registered with a recognized political party, representing less than 29 percent of the registered electorate. Both offices appear on the same Louisiana ballot in the same election cycle. Both are federal constitutional offices subject to the same First and Fourteenth Amendment protections. No rational basis exists for this disparity.

24. Subsequent to the events described above and during the pendency of this litigation, the Louisiana Legislature advanced HB 906, of the 2026 Regular Session, which as engrossed would repeal the current provision permitting No-Party voters to select a party ballot at their polling place and replace it with a party-controlled opt-in system allowing each major party's state central committee to decide through its bylaws whether unaffiliated voters may participate in its primary elections, with 180 days advance notice required to the Secretary of State. HB 906 constitutes legislative acknowledgement that the current compelled-affiliation mechanism for No-Party voters requires statutory correction. The bill's proposed remedy, complete party control over No-Party voter participation, does not cure the constitutional injury identified in this action but rather confirms its existence and threatens to compound it by potentially excluding No-Party

6

voters entirely from future federal primaries. The bill's 180-day advance notice requirement also confirms that the State possesses the administrative capacity to provide meaningful advance notice to voters and potential candidates regarding primary participation rules, further demonstrating the inadequacy of the notice failures described in paragraph 36 below.

### E. The Two Qualifying Paths and the Closed Fee Path

25.  HB 17 Section 410.4 provides two qualifying paths: a nominating petition or a qualifying fee. Section 410.4(B) requires affiliation with a recognized political party for the fee path, categorically excluding all non-recognized-party candidates from both offices. Such candidates are directed exclusively to the petition-only path. This bar is confirmed on the face of the Secretary's own published fee schedule and by the Secretary's Elections Division, and has not been altered by Act 7.

26.  The Secretary's own published Schedule of Fees, NOMINATING PETITIONS (Revised 10/2025), reflects this exclusion on its face by listing the qualifying fee for non-recognized-party candidates as "0 (cannot access)." A true and complete copy is attached as Exhibit H.

27.  Plaintiff Hyers paid the $600.00 qualifying fee for his 2024 First Congressional District candidacy under the open-primary regime then in effect, and the Secretary of State accepted his qualifying fee at that time. By February 13, 2026, the same fee path that the Secretary had accepted for him in 2024 had been categorically closed to him on the face of the Secretary's published fee schedule. On February 13, 2026, Plaintiff Hyers offered to pay the qualifying fee in cash and was refused on the ground that non-recognized-party candidates may not access the fee path. The change between 2024 and 2026 is not in Plaintiff Hyers's registration status, which is the same; the change is in the regime. The exclusion is categorical and structural: Hyers was and remains able to pay the qualifying fee but is barred from doing so.

### F. The Petition Signer Pool and Compelled Association

28.  HB 17 Section 410.5 restricts petition signers for non-recognized-party Senate candidates to voters NOT registered with a recognized political party. As of December 2025, Louisiana's registered voter population comprised approximately 1,086,000 registered Democrats, approximately 1,056,000 registered Republicans, approximately 831,914 "no party" voters, and approximately 20,000 voters registered with other non-recognized parties, for a total registered electorate of approximately 2,994,000. The combined R and D total of approximately 2,142,000 voters represents more than 71 percent of Louisiana's registered voter population.

29.  This signer pool restriction categorically bars the more-than-71-percent R and D majority of Louisiana registered voters, approximately 2,142,000 voters, from supporting a non-recognized-party Senate candidacy through the petition mechanism. Non-recognized-party Senate candidates are restricted exclusively to the approximately 851,914 non-recognized-party voters, representing less than 29 percent of the registered electorate, many of whom have conflicted or no ideological affinity with the candidate. Meanwhile, former supporters and constituents of the candidate who are registered R or D, including voters who have previously voted for the candidate and are among the more-than-71-percent R and D majority, are

7

categorically barred from signing. The State has no compelling interest in this compelled cross-ideological configuration. *See California Democratic Party v. Jones*, 530 U.S. 567 (2000); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979).

**30.** Under Act 7's House-only framework, by contrast, the 250 signatures required for a non-recognized-party House candidate may be gathered from any of Louisiana's approximately 2,994,000 registered voters regardless of party registration. This means the entire registered electorate is available to sign for a non-recognized-party House candidate, while less than 29 percent of the electorate is available to sign for a non-recognized-party Senate candidate. No rational basis exists for this disparity between federal candidates on the same ballot in the same election cycle.

**31.** The fact that Plaintiff Hyers was required to obtain verbal confirmation from the Secretary's Elections Division to determine which voters were eligible to sign his petition is itself a discrete due process notice problem. The statute is not self-explanatory on its face, and the Secretary has not provided meaningful written guidance to candidates regarding the operative interpretation of Section 410.5.

### G. The Secretary's Mass Reclassification of Voters and Pool Instability

**32.** On July 28, 2025, Secretary Landry announced that the Independent Party would cease to exist effective August 1, 2025, pursuant to Act 84 of the 2025 Regular Session (Exhibit B). Voters registered as Independent had their affiliation automatically changed to "No Party" without individual consent. This action materially altered and confused the non-recognized-party petition-signature pool from which non-recognized-party Senate candidates must gather signatures under HB 17 Section 410.5.

**33.** The mass reclassification, combined with the dynamic and changeable nature of voter affiliation throughout the petition circulation period, materially compressed the eligible signer pool in real time. Plaintiff Hyers, working from pooled voter lists purchased through the Secretary of State's website, encountered voters whose registration status had changed since the lists were generated. In at least one documented instance, a voter who had been listed as eligible to sign had subsequently changed their affiliation to Republican (annotated "Changed to R") and was therefore ineligible.

### H. Petition Administration and Inconsistent Parish Treatment

**34.** Secretary Landry administers the statewide voter registration database under La. R.S. 18:18(A)(2) and provides standards to parish registrars of voters for signature verification and petition processing. Despite these centralized functions, Secretary Landry failed to administer uniform instructions for non-recognized-party candidate petitions.

**35.** Signature review across parishes was conducted without uniform objective standards and produced inconsistent results for both Plaintiffs. Jefferson Parish refused to certify altered Forms NP-44-OES at the petition verification stage while Orleans, St. Bernard, and Ascension Parishes

accepted the same alterations on the same forms. Petition signatures were accepted and rejected for varying reasons across parishes, without any uniform written standard from Secretary Landry governing the review process. The full results across parishes for both Plaintiffs are documented in Exhibits G-1 through G-6.

## I. Failure of Public Notice

**36.** Secretary Landry has failed to provide accurate, meaningful and timely public notice of the 2026 cycle's qualifying process during the period in which petition gathering has been operationally feasible. The Governor's Proclamation No. 79, Section 8, issued on December 30, 2025, was the first effective public notice of the 2026 qualifying process, by which time the petition deadline was imminent. The downstream consequences were severe: voters approached during petition circulation had no prior public awareness of the process and predictably reacted with confusion, hostility, or refusal; non-recognized-party candidates were materially deprived of the lead time the petition path practically requires; and the candidate's necessary advance knowledge of voter affiliation status was unfamiliar and alarming to the public approached cold. This failure is a discrete procedural due process violation independent of the structural exclusions pleaded above.

## J. Chilling Effects During Petition Circulation

**37.** The petition path produced documented chilling effects on willing and prospective signers, materially reducing the already-fragmented pool of statutorily eligible signers. During petition circulation, multiple registered voters expressed reluctance, fear, hostility, or refusal in response to being approached about signing a nominating petition for a non-recognized-party candidate. These reactions included instances of workplace and labor-affiliation pressure, social and political confrontation, and confusion or alarm associated with the candidate's necessary advance knowledge of the voter's affiliation status. Specific incidents are reserved for sworn declaration. *See Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87 (1982).

## K. Nominating Petition Submissions, Qualifying Day, and Aftermath

**38.** Plaintiffs submitted altered Forms NP-44-OES to parish registrars of voters in Orleans, Jefferson, St. Bernard, and Ascension Parishes between January 12, 2026 and the January 14, 2026 submission deadline for signature verification. On February 13, 2026, the final day of the qualifying period, Plaintiffs presented themselves to the Secretary of State and submitted altered Forms QF-42, accompanied by the parish-verified Forms NP-44-OES.

**39.** Petition certification results across the four parishes in which Plaintiff Hyers submitted nominating petitions are as follows:

    **a. Orleans Parish.** Eleven (11) signatures submitted, ten (10) certified, one (1) rejected, by letter of Lisa Marie Manning Bridges, Registrar of Voters, dated February 9, 2026 (Exhibit G-3).

**b. Jefferson Parish.** Twelve (12) signatures submitted across eight (8) petition pages, eight (8) certified, by letter of Dennis A. DiMarco, Registrar of Voters, dated January 22, 2026 (Exhibit G-1).

**c. St. Bernard Parish.** Five (5) signatures submitted across three signature pages, four (4) certified and one (1) rejected as "Ineligible Party," by Receipt of Certified Nominating Petition signed by Mary Chauprette, Confidential Assistant to the Registrar of Voters, dated January 16, 2026 (Exhibit G-5).

**d. Ascension Parish.** One (1) signature submitted, one (1) accepted, by letter of Shanie M. Bourg, CERA, Registrar of Voters, dated January 22, 2026 (Exhibit G-6). Ascension Parish accepted Plaintiff Hyers's altered Form NP-44-OES without objection.

40.   Petition certification results across the two parishes in which Plaintiff Glass submitted nominating petitions are as follows:

**a. Orleans Parish.** Three (3) signatures submitted, two (2) approved, one (1) rejected, by letter of Lisa Marie Manning Bridges, Registrar of Voters, dated February 9, 2026 (Exhibit G-4). Orleans Parish processed Ms. Glass's petition without completing its own internal "Nominating Petition Submission Checklist and Receipt" form, which records that no compliance checkbox was completed and no Registrar of Voters initials were entered (sub-Exhibit F-5 internal checklist).

**b. Jefferson Parish.** Three (3) signatures submitted, one (1) certified, two (2) rejected (one for "Incomplete Address" and one for "Witness and voter are the same person"), by letter of Dennis A. DiMarco, Registrar of Voters, dated January 22, 2026 (Exhibit G-2).

41.   Across all parishes combined, Plaintiff Hyers obtained twenty-three (23) certified signatures of the two thousand five hundred (2,500) signatures required for U.S. Senate candidates, or approximately 0.92 percent of the threshold. Plaintiff Glass obtained three (3) certified signatures of the seven hundred fifty (750) signatures that were required for U.S. Representative candidates under the cancelled semi-closed primary framework, or approximately 0.40 percent of that threshold. Both Plaintiffs fell well short of the statutory thresholds not because they failed to gather signatures from willing voters, but because the structure of HB 17, combined with the Secretary's failure of public notice, mass reclassification of voters, restriction of the signer pool to less than 29 percent of the registered electorate while barring the more-than-71-percent R and D majority, and inconsistent parish-level enforcement, made meaningful petition success unattainable.

42.   On February 13, 2026, the sequence of qualifying-day events was as follows. First, Plaintiffs challenged the false certification language on Forms QF-42 and NP-44-OES with the Secretary's representative, who acknowledged the defect and permitted the alterations described in paragraph 13 above. Second, Plaintiff Hyers submitted a written letter to Secretary Landry requesting discretionary relief under powers granted by SB 1 of the First Extraordinary Session 2025: (a) that the required number of signatures be reduced to one (1), qualifying both Plaintiffs; or (b) that any previously qualified non-recognized-party candidate with five thousand (5,000) or

more votes in the 2024 federal election cycle be credited with the 2,500-signature threshold, thereby qualifying Plaintiff Hyers based on his 6,781 votes. A true and complete copy is attached as Exhibit C. The Secretary verbally denied both requests and provided no written response; at the time of denial, the Secretary's representative provided Plaintiffs with copies of the governing statutes. Third, Plaintiffs submitted their altered Forms QF-42 accompanied by the parish-verified Forms NP-44-OES and were informed that their certified signature totals were insufficient to qualify. Fourth, Plaintiffs offered to pay the qualifying fee in cash in lieu of the petition path. The qualifying fee was refused on the ground that non-recognized-party candidates may not access the fee path, consistent with the Secretary's own published fee schedule (Exhibit H).

### L. The Glass Election Commissioner Narrative

43. In addition to her candidacy injuries, Plaintiff Glass is a commissioned Louisiana Election Commissioner. In late January or early February 2026, she received notice of mandatory commissioner training requirements applicable to the upcoming May 16, 2026 primary.

44. On March 6, 2026, at 9:22 a.m., the Jefferson Parish Election Department notified all commissioners of new closed-party-primary training requirements, providing links to a Closed Party Information PDF, a Closed Party Training Video, and a Provisional Training Video. This training was specifically designed to prepare commissioners to administer the closed-party primary system that Plaintiffs challenge in this action.

45. On March 6, 2026, at 2:10 p.m., Ms. Glass emailed the Jefferson Parish Election Department asking whether the new training was a paid class separate from the standard renewal class. At 2:18 p.m. that same day, Victoria R. Ricks, Deputy Clerk of Court for the Jefferson Parish Elections Department, replied that the training would not be a paid class, but was a different class to inform and prepare commissioners about the changes and procedures for the upcoming closed party primary election.

46. Following this exchange, Ms. Glass contacted the Secretary of State's Elections Division by telephone for two purposes: first, to inquire about compensation for the additional training required for the closed-party primary; and second, to formally notify the State that she could not be a party to administering election laws she believed to be unconstitutional. This telephone call constituted her formal resignation from her commissioner duties for the May 16, 2026 election, directed to the office of the named Defendant in this action.

47. Despite Ms. Glass's formal resignation communicated directly to the Secretary of State's office, Secretary Landry's office issued a formal Commission to Serve letter commissioning Ms. Glass to serve as Election Commissioner for Precinct 075 at East Jefferson High School for the May 16, 2026 election (Exhibit A). This Commission, issued after and notwithstanding her refusal, constitutes bureaucratic compulsion: the State formally commanded her participation in administering laws she had formally refused to administer on constitutional grounds, through the very office against which she had filed suit.

**48.**   At or about the time of the early voting period, Commissioner in Charge Kay Bedell contacted Ms. Glass by text message to confirm whether she would serve. In that exchange, Ms. Glass stated explicitly: "I did not go to class, I called Sec of State then filed suit against her and cpl days ago got my paper to serve even though I called office and asked if we got extra pay for this fiasco and resigned. But they sent me my lottery saying I was chosen." Ms. Bedell confirmed that Ms. Glass would be removed from the service list and thanked her for her prior service. This text exchange constitutes documentary evidence that: (a) Ms. Glass called the Secretary of State's office and resigned; (b) she filed suit against the Secretary; (c) she received the Commission to Serve despite her resignation and the pending litigation; and (d) she formally confirmed her non-service to the Commissioner in Charge. Ms. Glass did not serve as Election Commissioner on May 16, 2026.

**49.**   Ms. Glass's refusal to administer the unconstitutional closed-party primary is constitutionally protected conduct under *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), and *Wooley v. Maynard*, 430 U.S. 705 (1977). The State's commissioning of her anyway, despite her formal resignation and pending litigation against the Secretary of State, constitutes an independent constitutional injury: the State attempted to conscript her into administering laws she had challenged in federal court.

### M. The May 16, 2026 Primary: Compelled Affiliation

**50.**   On May 16, 2026, both Plaintiffs appeared at their polling place in Jefferson Parish to vote in the primary election. The May 16 primary proceeded as a closed-party primary for U.S. Senate and other party offices pursuant to the statutes and administrative framework challenged in this action. U.S. House races on that date were cancelled by Act 7, signed three days earlier.

**51.**   As "no party" registered voters, both Plaintiffs were required to execute a compelled temporary declaration of Republican Party affiliation, signing under duress, in order to receive a full ballot and participate in the election, including access to the U.S. Senate race on the ballot. Both Plaintiffs complied with this requirement under duress in order to exercise their right to participate in the electoral process.

**52.**   During the voting process, both Plaintiffs verbally objected to the poll commissioners administering the election about the unconstitutional administration of the closed-party primary system they were being required to navigate.

**53.**   The compelled temporary Republican affiliation declaration required of both Plaintiffs on May 16, 2026 is the precise injury at the core of this action: non-party voters are required to declare affiliation with a party they have chosen not to join as the price of participating in a federal primary election. This is not a theoretical or prospective harm. It occurred on May 16, 2026, during the pendency of this litigation, and will recur in future election cycles absent injunctive relief.

### N. Cumulative Financial and Time Burden

54. Plaintiff Hyers's documented out-of-pocket expenditures since 2019 fall in two distinct phases. From 2019 through 2023, Hyers personally incurred approximately $7,250 in expenses across his 2019 Louisiana State Senate campaign, his 2023 Jefferson Parish Council At-Large campaign, his attendance at 2021 Redistricting Roadshow meetings, and related civic activities. From mid-May 2024 to the present, Plaintiffs Hyers and Glass have jointly invested approximately $3,000, comprising approximately $2,300 to $2,400 on Hyers's 2024 First Congressional District candidacy (including the $600.00 qualifying fee paid under the open-primary regime then in effect, yielding 6,781 votes) and at least $700 on the 2026 candidacy effort and signature-gathering campaign. Aggregate time invested by Plaintiff Hyers is in excess of several thousand hours over multiple years. Precise figures are reserved for sworn declaration.

55. The modesty of Plaintiffs' cumulative dollar investment is itself probative. Two plaintiffs of ordinary means, with documented prior civic investment exceeding $7,250, with 6,781 votes of demonstrated public support in 2024, with petition collection efforts across four parishes, and with the willingness and ability to pay the qualifying fee in cash, still obtained only 23 and 3 certified signatures respectively against thresholds of 2,500 and 750. This is direct evidence of structural rather than personal failure. Under *Lubin v. Panish*, 415 U.S. 709 (1974), and *Bullock v. Carter*, 405 U.S. 134 (1972), an electoral regime may not impose financial or structural barriers on candidates that operate as a wealth test or as a structural exclusion of disfavored classes of candidates.

## CLAIMS FOR RELIEF

### COUNT I
### First Amendment: Compelled Association and Compelled Speech
### (42 U.S.C. Section 1983)

56. Plaintiffs incorporate by reference all preceding paragraphs.

57. HB 17, as administered by Defendant, compels Plaintiffs to certify participation in a primary from which they are statutorily barred (*Wooley v. Maynard*, 430 U.S. 705 (1977)); compels temporary affiliation with a recognized party as a condition of meaningful primary participation in violation of the right not to associate (*California Democratic Party v. Jones*, 530 U.S. 567 (2000)); compels non-recognized-party Senate candidates to restrict their petition signer pool to less than 29 percent of the registered electorate while being barred from the more-than-71-percent R and D majority including former supporters; and burdens Plaintiffs' First Amendment associational rights (*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986); *Kusper v. Pontikes*, 414 U.S. 51 (1973)). The chilling effects on willing signers documented in paragraph 37 above further compound these associational burdens.

58. The compelled temporary Republican affiliation declaration executed by both Plaintiffs on May 16, 2026, signing under duress, is concrete proof that these burdens are not theoretical. They are administered by Secretary Landry through the official forms, training materials, and

administrative directives she promulgates and distributes. Her enforcement connection is direct and specific.

**59.** These compelled-association injuries are not cured or mooted by Act 7. Act 7's partial adjustment of House candidate petition requirements does not address the compelled-signer restriction for Senate, does not address the compelled temporary affiliation declaration required of "no party" voters in the semi-closed primary, and does not retroactively cure the injuries suffered during the 2026 qualifying cycle. With respect to Plaintiff Glass specifically: Act 7's creation of a new August 2026 qualifying window for non-recognized-party House candidates does not moot her completed historical injuries from the January through February 2026 qualifying cycle, her Election Commissioner conscription injury, her compelled false certification injury, or her conditioned primary-participation injury. Those are past completed harms independent of any prospective qualifying opportunity. To the extent Act 7 provides a prospective qualifying path for her House candidacy in the August 2026 cycle, the prayer for relief addresses that prospective dimension separately.

**COUNT II**
**Equal Protection: Three-Tier Voter Classification,**
**Differential Ballot Access, and Bifurcated Ballot**
**(42 U.S.C. Section 1983)**

**60.** Plaintiffs incorporate by reference all preceding paragraphs.

**61.** HB 17 creates a three-tier voter classification (recognized-party voters, "no party" voters subject to compelled temporary affiliation, and other non-recognized-party voters categorically excluded) that distributes ballot access and primary participation unequally without sufficient justification, in violation of *Williams v. Rhodes*, 393 U.S. 23 (1968), *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), and *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966).

**62.** On the same ballot, the same "no party" voter may vote in state and local races under the open primary without any party affiliation requirement, but is required to temporarily affiliate with a recognized party in congressional, Public Service Commission, and Supreme Court races under HB 17's semi-closed system. No compelling interest justifies treating the same voter differently for different offices appearing on the same ballot. The franchise extends to the determinative primary. *See Smith v. Allwright*, 321 U.S. 649 (1944).

**63.** Act 7's House-only adjustment creates an additional Equal Protection violation. Non-recognized-party House candidates may gather 250 signatures from any of Louisiana's approximately 2,994,000 registered voters. Non-recognized-party Senate candidates must gather 2,500 signatures from approximately 851,914 voters, less than 29 percent of the registered electorate, while being categorically barred from the more-than-71-percent R and D majority. The fee path is categorically closed to non-recognized-party candidates for both offices. No

14

rational basis exists for this disparity between federal candidates on the same ballot in the same election cycle.

## COUNT III
### Anderson-Burdick Balancing
### (First and Fourteenth Amendments; 42 U.S.C. Section 1983)

64. Plaintiffs incorporate by reference all preceding paragraphs.

65. Under *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), a court must weigh the character and magnitude of the burden on First and Fourteenth Amendment rights against the State's justifications. Severe restrictions must be narrowly drawn to advance a compelling interest.

66. The burden is severe:

a. HB 17 conditions primary participation on temporary affiliation with a recognized political party for all "no party" voters seeking to participate in U.S. Senate and other covered races, concretely demonstrated by the compelled Republican affiliation declaration both Plaintiffs executed under duress on May 16, 2026.

b. HB 17 categorically denies non-recognized-party candidates the fee-based qualifying path for both Senate and House, as documented on the face of the Secretary's own published fee schedule (Exhibit H) and confirmed by the Secretary's Elections Division. This structural bar is absolute regardless of financial ability.

c. For Senate candidates, HB 17 Section 410.5 restricts the petition signer pool to approximately 851,914 non-recognized-party voters, less than 29 percent of the registered electorate, while categorically barring the approximately 2,142,000 R and D voters representing more than 71 percent of the registered electorate, including many former supporters and natural constituents of non-recognized-party candidates. Non-recognized-party House candidates under Act 7, by contrast, may draw from the entire registered electorate of approximately 2,994,000 voters.

d. The Secretary's mass reclassification of Independent Party voters to "No Party" in July 2025, combined with the absence of real-time affiliation status disclosure, rendered the eligible signer pool a moving target inadequately disclosed to candidates exercising the petition path.

e. Standardless and inconsistent parish-level administration of nominating petition review, operated under Secretary Landry's supervision without uniform objective criteria, means identical signatures and petition forms may be accepted in one parish and rejected in another, with no uniform written standard and no meaningful review mechanism. The documented results across parishes for both Plaintiffs, set forth in paragraphs 39 through 40 above and Exhibits G-1 through G-6, reflect this standardlessness.

15

**f.** Secretary Landry failed to provide meaningful and timely public notice of the 2026 cycle's qualifying process during the period in which petition gathering was operationally feasible, producing documented chilling effects on willing signers and materially further reducing the already-fragmented eligible pool.

**g.** Act 7's House-only adjustment is affirmative legislative evidence of burden severity. The legislature acknowledged that the petition and signer-pool burdens required statutory relief for House candidates, while deliberately declining to provide any such relief for Senate candidates facing the same or greater burdens. The State cannot argue that Senate ballot-access burdens are constitutionally insignificant after acknowledging through legislation that identical burdens for House candidates required relief. Act 7 did not remedy the fee-path bar or the inflated fee schedule for either office.

67.     The State's interests in ballot integrity and administrative efficiency do not justify these severe burdens. Non-recognized-party candidates have already been screened by the petition process itself. The 483-percent Senate fee increase and 150-percent House fee increase compound an exclusion rather than serving any ballot-integrity interest. The signer-pool restriction for Senate candidates imposes compelled cross-ideological association while contributing nothing to petition authenticity. The standardless administration undermines, rather than serves, the State's interest in orderly ballot access.

68.     Multiple less-restrictive alternatives exist, including the prior open-primary system, a non-partisan top-two primary, or recognition that Plaintiff Hyers's 6,781 votes in 2024 constitute sufficient demonstration of public support to substitute for the petition threshold. *Clingman v. Beaver*, 544 U.S. 581 (2005), is distinguishable: that case involved a single voter's wish to cross over into a party-chosen semi-closed primary structure, not a state-imposed bifurcated ballot, mass reclassification, compelled cross-ideological signer restriction, and a closed fee path. The burden in *Clingman* was slight, longstanding, and party-driven; the burden here is severe, recently imposed, and state-driven.

**COUNT IV**
**Fourteenth Amendment Due Process:**
**Standardless Qualification Procedures and Failure of Public Notice**
**(42 U.S.C. Section 1983)**

69.  Plaintiffs incorporate by reference all preceding paragraphs.

70.     Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process requires meaningful, consistent, and non-arbitrary administration of qualifying procedures, as well as adequate and timely notice of those procedures to affected parties.

71.     Defendant's administration of HB 17 produced standardless and inconsistent parish-by-parish treatment of identical petition-verification conduct: Jefferson Parish refused to certify altered Forms NP-44-OES while Orleans, St. Bernard, and Ascension Parishes accepted the same alterations on the same forms submitted by the same candidates; different parishes

applied different signature-verification standards to petitions from both Plaintiffs, producing inconsistent acceptance and rejection results documented in Exhibits G-1 through G-6; and Orleans Parish processed Plaintiff Glass's petition without completing its own internal "Nominating Petition Submission Checklist and Receipt" form (sub-Exhibit F-5), leaving no compliance checkboxes completed and no Registrar of Voters initials entered.

**72.** Defendant further failed to provide meaningful and timely public notice of the 2026 cycle's qualifying process during the period in which petition gathering was operationally feasible. A regime that requires 2,500 signatures for Senate from a pool representing less than 29 percent of the registered electorate, while barring the more-than-71-percent R and D majority, and provides no meaningful public notice until the deadline is imminent, does not satisfy the procedural requirements of due process.

**73.** These inconsistencies and notice failures reflect the absence of uniform written instructions from Secretary Landry to parish registrars governing the treatment of pre-printed Form NP-44-OES defects, signature verification standards, and the post-July-2025 reclassified "no party" pool.

## STANDING

**74.** Plaintiffs have Article III standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), and *Bost v. Illinois State Board of Elections*, 146 S. Ct. 513 (2026) (cited for standing principles only). They have suffered injuries-in-fact that are concrete, particularized, and actual or imminent; the injuries are fairly traceable to Defendant's administration of HB 17; and the injuries would be redressed by the relief sought.

**75.** Plaintiff Hyers has standing as a declared 2026 U.S. Senate candidate denied the fee-based qualifying path, denied meaningful petition-based qualifying access across four parishes, compelled to certify falsely on Forms QF-42 and NP-44-OES, subjected to inconsistent parish enforcement, and compelled to execute a temporary Republican affiliation declaration under duress on May 16, 2026.

**76.** Plaintiff Glass has standing both as a declared 2026 U.S. House of Representatives candidate subject to the same statutory regime, and independently as a commissioned Election Commissioner who was formally conscripted to administer laws she had refused on constitutional grounds after notifying Secretary Landry's office directly of her refusal and filing this suit. The Election Commissioner injury exists wholly apart from her candidacy. The dismissal or narrowing of any single standing theory does not defeat the case as a whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jon F. Hyers and Elizabeth R. Glass respectfully pray that this Court:

    **a.** Declare that HB 17 (Act 1, First Extraordinary Session 2024), as administered by Defendant in conjunction with the implementing acts identified in paragraph 15 above,

violates the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983 as applied to Plaintiffs and similarly situated voters and candidates;

**b.** Declare that Act No. 7 of the 2026 Regular Session's deliberate exclusion of U.S. Senate candidates from its remedial provisions violates the Equal Protection Clause of the Fourteenth Amendment by treating identically situated federal candidates differently without rational basis, with specific reference to the disparate petition thresholds (2,500 from a restricted pool of less than 29 percent of the electorate for Senate versus 250 from the full electorate for House) and signer pool eligibility rules imposed on Senate versus House non-recognized-party candidates on the same ballot in the same election cycle;

**c.** Declare that Forms QF-42 and NP-44-OES, as promulgated by Secretary Landry, violate the First Amendment by compelling non-recognized-party candidates to certify false statements as a condition of ballot access;

**d.** Declare that Louisiana's semi-closed primary compelled-affiliation requirement, as administered by Secretary Landry, violates the First Amendment rights of "no party" voters who must declare temporary party membership to access the full primary ballot, as demonstrated by both Plaintiffs' compelled Republican affiliation declarations on May 16, 2026;

**e.** Declare that Secretary Landry's commissioning of Ms. Glass to administer an election she had formally refused to administer on constitutional grounds, after Ms. Glass notified the Secretary's office directly of her refusal and filed this suit, constitutes a violation of Ms. Glass's First Amendment rights;

**f.** Enter preliminary and permanent injunctive relief enjoining Defendant from administering HB 17 and its implementing acts in a manner that denies non-recognized-party candidates the fee-based qualifying path for any federal office, compels cross-ideological association within the petition signer pool, imposes fee increases that operate as a wealth test, conditions ballot access on the surrender of the right not to associate with a recognized political party, or compels false certification on Forms QF-42 and NP-44-OES;

**g.** Order Defendant to place Plaintiff Hyers's name on the November 3, 2026 General Election ballot as a candidate for United States Senate, in light of his good-faith compliance with the qualifying framework available to him, his 6,781 votes in the 2024 First Congressional District general election demonstrating substantial public support, and the severe constitutional defects of HB 17 as administered for Senate candidates, for whom no alternative qualifying path exists;

**h.** With respect to Plaintiff Glass, order that she not be required to re-qualify for the United States House of Representatives, First Congressional District, under any statutory framework that perpetuates the constitutional defects identified in this Complaint, including the standardless parish-level petition review process she was subjected to during the January through February 2026 qualifying cycle; and order, in the alternative, that if the Act 7 August 2026 qualifying path for House non-recognized-party candidates is found constitutionally

inadequate, Plaintiff Glass be placed on the November 3, 2026 General Election ballot as a candidate for United States House of Representatives, First Congressional District;

**i.** Order Defendant to issue uniform written instructions to all sixty-four parish registrars of voters governing the treatment of Forms QF-42 and NP-44-OES defects, signature verification, and the reclassified "no party" pool;

**j.** Order Defendant to provide meaningful and timely public notice of qualifying procedures for future federal election cycles in Louisiana;

**k.** Retain jurisdiction to enforce the relief granted;

**l.** Award Plaintiffs their reasonable attorneys' fees and costs to the extent recoverable under 42 U.S.C. Section 1988;

**m.** Award costs of suit; and

**n.** Grant such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## VERIFICATION

I, Jon F. Hyers, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that I have read the foregoing First Amended Complaint and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Dated: June 2nd , 2026

Jon F. Hyers, Pro Se Plaintiff
509 Houma Blvd., Metairie, Louisiana 70001
(504) 478-3254
jonfrankiehyers@gmail.com

I, Elizabeth R. Glass, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that I have read the foregoing First Amended Complaint and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Dated: June 2nd, 2026

Elizabeth R. Glass, Pro Se Plaintiff
509 Houma Blvd., Metairie, Louisiana 70001
(504) 657-8199
liddyswork@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on _____ , 2026, a copy of the foregoing First Amended Complaint was served by United States mail, postage prepaid, upon:

> **Nancy R. Landry**, Louisiana Secretary of State, P.O. Box 94125, Baton Rouge, Louisiana 70804

> **Liz Murrill**, Louisiana Attorney General, P.O. Box 94005, Baton Rouge, Louisiana 70804

Jon F. Hyers, Pro Se Plaintiff                    Elizabeth R. Glass, Pro Se Plaintiff

## EXHIBIT LIST

**Exhibit A:** Glass's Commission to Serve as Election Commissioner, May 16, 2026, Precinct 075, East Jefferson High School.

**Exhibit B:** Louisiana Secretary of State Media Release, July 28, 2025, announcing dissolution of the Independent Party effective August 1, 2025.

**Exhibit C:** Plaintiff Hyers's letter to Secretary Landry, February 13, 2026, requesting discretionary relief.

**Exhibit D:** Plaintiff Hyers's altered Form QF-42 (Notice of Candidacy), February 13, 2026.

**Exhibit E:** Plaintiff Glass's altered Form QF-42 (Notice of Candidacy), February 13, 2026.

**Exhibit F:** Nominating Petitions (Form NP-44-OES), all parishes, both Plaintiffs. Sub-Exhibits F-1 through F-6: F-1 Hyers/Jefferson (8 pages, 8 certified); F-2 Hyers/Orleans (10 approved); F-3 Hyers/St. Bernard (4 certified, 1 ineligible party); F-4 Glass/Jefferson (1 certified, internal checklist showing no compliance boxes completed); F-5 Glass/Orleans (2 approved); F-6 Hyers/Ascension (1 accepted).

20

**Exhibit G:** Parish Certification Letters and Receipts. G-1 Jefferson/Hyers (DiMarco, Jan. 22, 2026); G-2 Jefferson/Glass (DiMarco, Jan. 22, 2026); G-3 Orleans/Hyers (Bridges, Feb. 9, 2026); G-4 Orleans/Glass (Bridges, Feb. 9, 2026); G-5 St. Bernard/Hyers (Chauprette, Jan. 16, 2026); G-6 Ascension/Hyers (Bourg, Jan. 22, 2026).

**Exhibit H:** Louisiana Secretary of State Schedule of Fees, NOMINATING PETITIONS (Revised 10/2025), showing the qualifying fee for non-recognized-party candidates as "0 (cannot access)."

**Exhibit I:** Louisiana Secretary of State May 14, 2026 Media Release, announcing qualifying options available to "Potential candidates" for the 2026 U.S. House race.